IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOHN F. SINGER, an individual )
          Plaintiff, )
v. ) Case No. 13-CV-72-GKF-TLW
JANICE STEIDLEY and M. BRYCE LAIR, )
          Defendants. )

**OPINION AND ORDER**

Before the court is the Motion to Dismiss the Third, Fourth and Fifth Claims for Relief of Plaintiff's First Amended Complaint [Dkt. #31] filed by defendants Janice Steidley ("Steidley") and M. Bryce Lair ("Lair").

**I. Background/Procedural History**

Plaintiff John F. Singer ("Singer"), a Claremore Police Department ("CPD") investigator, filed suit against Steidley, the District Attorney for District #12 (Craig, Mayes and Rogers Counties), State of Oklahoma, and Lair, the First Assistant District Attorney for the district, on February 4, 2013. [Dkt. #2]. His complaint alleged Steidley and Lair manufactured evidence that he had lied in sworn statements concerning a criminal investigation 18 months earlier, and then reported the alleged misconduct to law enforcement officials, courts and criminal defense attorneys, purportedly pursuant to *United States v. Giglio*, 405 U.S. 150 (1972). Singer asserted claims for violation of his First Amendment rights of free speech and association; violation of his Fourteenth Amendment property and liberty interests; exemplary damages; declaratory judgment; and injunctive relief.

Defendants moved to dismiss the Complaint. [Dkt. #14]. The court granted the motion in part and denied it in part, dismissing Singer's second claim for relief for violation of his Fourteenth Amendment rights based on defendants' qualified immunity; his fifth claim for relief for declaratory judgment; his sixth claim for relief for an injunction; and his first claim for relief for violation for his First Amendment rights, to the extent it alleged disclosures to the U.S. Attorney and defense attorneys in the Rogers County criminal cases. [Dkt. #19 at 19]. The motion was denied with respect to disclosures made to police chiefs, the criminal defense attorney website and the Claremore newspaper. [*Id.*]. The court also denied the motion with respect to the third claim for relief for exemplary damages. [*Id.*].

With leave of court, Singer filed a First Amended Complaint which added state law claims for libel, slander and defamation. [Dkt. #30]. Defendants filed a motion to dismiss the new claims pursuant to Fed. R. Civ. P. 12(b)(6). [Dkt. #31].

## II. Allegations of the First Amended Complaint

The factual allegations of the amended complaint are largely identical to those of the original complaint, and the court—having summarized those allegations in its order on defendants' motion to dismiss the original complaint—will not repeat them in their entirety. Importantly, for purposes of the pending motion, the First Amended Complaint makes the following factual allegations:

- Singer is an investigator for the Claremore Police Department, a commissioned Special Deputy for the United States Marshal's Service in the Northern District of Oklahoma, and serves on the Northern Oklahoma Violent Crimes Task Force. He has been the lead investigator in multiple violent murders and large scale federal drug conspiracies, and is regularly called upon by other agencies in northeast Oklahoma to assist in the investigation of major crimes. [First Amended Complaint, ¶¶7-9].

- Singer supported Steidley in her bid for District Attorney for District 12 but after she took office, he became "a vocal critic" of her performance. [*Id.*, ¶¶12-14]. He

2

participated in a background check of a criminal investigator hired by Steidley and determined the investigator's background contained a number of issues that would require disclosure to attorneys defending prosecutions in which he was involved pursuant to *Giglio*. [*Id.*, ¶15]. Singer told Steidley he would not work with any *Giglio*-impaired investigator or allow him to become involved in any of his cases, which angered Steidley. [*Id.*, ¶16].

- Additionally, in the fall of 2012, Steidley inquired of Singer through an agent whether Singer's wife intended on running against her in 2014 for the office of District Attorney, and soon afterward, made clear that she intended to start her 2014 campaign immediately. [*Id.*, ¶17].

- On January 6, 2013, the Claremore Daily Progress published an article that was critical of Steidley's performance as a District Attorney with regard to the prosecution of drug offenses; all of the cases referenced in the article were investigated by Singer. [*Id.*, ¶18].

- Soon thereafter, and as a result of Singer's criticisms of Steidley's office, his participation in the background investigation of the District Attorneys' investigator, Steidley's concern that Singer's wife would run against her for District Attorney, and defendants' assumption that Singer was the principal source of the article, defendants commenced a concerted action to retaliate against Singer and to intimidate him by destroying his career as a law enforcement officer, and his reputation with the public and within the law enforcement community. [*Id.*, ¶20].

- "Because of Singer's exemplary record as a law enforcement officer, Steidley and Lair decided to manufacture evidence that Singer had acted improperly during the investigation of one of his cases, and then use this manufactured evidence against Singer in order to destroy his career and ruin his reputation." [*Id.*]. Defendants chose a case Singer had investigated 18 months before, determined he had acted improperly and decided the manufactured evidence constituted *Giglio* material, and therefore needed to be disclosed to criminal defense counsel in cases investigated by Singer. [*Id.*, ¶¶20-21].

- In January 2013, Steidley and Lair "presented . . . manufactured evidence" to the chiefs of the CPD and the Pryor Police Department. On January 17, 2013, Lair, "through his close friend, Josh Lee, disclosed the existence of manufactured *Giglio* Material relating to Singer on the Oklahoma Criminal Defense Attorney Website." On January 29, 2013, Lair "provided a statement to the Claremore Daily Progress that *Giglio* Material existed with regard to Singer, and that the District Attorneys' office did not need to have a judicial finding on this issue." On January 30, 2013, Steidley provided a lengthy interview to the newspaper concerning the manufactured *Giglio* material. [*Id.*, ¶22].

3

- "As a result of Defendants' unlawful and tortious conduct, . . . Singer's constitutionally-protected property interest in his employment, good name, reputation and integrity has been severely and irrevocably damaged." [*Id.*, ¶23].

- "Singer relies on his reputation as a criminal investigator in order to continue his work with the Claremore Police Department, the United States Marshal's Office, and the Northern Oklahoma Violent Crimes Task Force." [*Id.*, ¶24].

- Defendants' actions in disseminating the alleged *Giglio* material have harmed and lowered Singer's reputation in the public and the law enforcement community. [*Id.*, ¶25]. He has been informed by his superiors that if the material in question actually is *Giglio* material, his employment will be terminated; he has been placed on modified duty in that he cannot work on any cases or take any action that would require him to be a witness; all of his pending criminal prosecutions in state and federal court have been stayed indefinitely; and he is unable to open any new prosecutions with the U.S. Attorney's Office. [*Id.*, ¶26]. Additionally, his effectiveness as an investigator has been and will continue to be severely and irreparably damaged by the dissemination of the alleged *Giglio* material because he will be subject to attacks on his credibility every time he testifies on behalf of the prosecution in court. [*Id.*, ¶27].

- Defendants published falsehoods to third parties without privilege. [*Id.*, ¶28]. The falsehoods were published by defendants intentionally and with malice, or in the alternative, with fault amounting at least to negligence on the part of the defendants. [*Id.*, ¶29]. By words and deeds, defendants have systematically, intentionally, and with malice attempted to ruin Singer's reputation and damage his standing in the community. [*Id.*, ¶30].

- The falsehoods are actionable, irrespective of the existence of special harm. [*Id.*, ¶31]. The falsehoods have harmed and lowered Singer's reputation in the estimation of the community, exposed him to public hatred, contempt, ridicule or obloquy, deprived him of public confidence and injured him in his occupation. [*Id.*, ¶¶32-35]. The falsehoods tend to and did deter third persons from associating or dealing with Singer, and caused special harm to him. [*Id.*, ¶¶36-37].

The First Amended Complaint reasserts Singer's claims for violation of his First Amendment right to free speech and association and exemplary damages, and it adds claims for defamation (Third Claim for Relief), libel (Fourth Claim for Relief) and slander (Fifth Claim for Relief). [*Id.* at 8-10].

### III. Applicable Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court clarified this standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007), ruling that to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 622, 633 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted). On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Under the *Twombly* standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)) (emphasis in original). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Id*. at 1247 (citing *Twombly*, 127 S.Ct. at 1965) (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*.

The Tenth Circuit Court of Appeals has interpreted *Twombly* as a middle ground between "heightened fact pleading," which is expressly rejected, and allowing complaints that are no

more than "labels and conclusions," which courts should not allow. *Id.* at 1247 (citing *Twombly*, 127 S.Ct. at 1964, 1965, 1974). Accepting the allegations as true, they must establish that the plaintiff plausibly, and not just speculatively, has a claim for relief. *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id*. at 1248. The Tenth Circuit Court of Appeals instructed in *Robbins* that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context . . . [and] the type of case." *Id*. (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008)). A simple negligence action may require significantly fewer allegations to state a claim under Rule 8 than a case alleging antitrust violations (as in *Twombly*) or constitutional violations (as in *Robbins*). *Id*.

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). The issue on a 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* The notice pleading standard "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* at 512 (2002).

### IV. Analysis

### A. Slander Claim

"Slander" is statutorily defined as

. . . a false and unprivileged publication, other than libel, which:

6

1. Charges any person with crime, or with having been indicted, convicted or punished for crime;

2. Imputes in him the present existence of an infectious, contagious or loathsome disease.

3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profit.

4. Imputes to him impotence or want of chastity; or,

5. Which, by natural consequences, causes actual damage.

12 Okla. Stat. § 1442.

As set forth above, Singer has alleged defendants "manufactured" evidence of an alleged *Giglio* violation to destroy his career and ruin his reputation and intentionally and maliciously (or alternatively, negligently) disclosed or "published" the manufactured evidence to the newspaper, a defense attorneys' website and the Claremore and Pryor police chiefs in order to destroy Singer's career as a law enforcement officer and his reputation both with the public and within the law enforcement community.  Singer alleges the disclosures were not privileged and have harmed his reputation and standing in the public and law enforcement community, deprived Singer of public confidence, injured his occupation, deterred third persons from associating or dealing with him and caused him special harm.  He describes in some detail the ways in which his reputation and employment with the Claremore Police Department have been damaged.

Defendants first argue that plaintiff has failed to allege publication of any false material, other than in conclusory fashion.  However, plaintiff alleges defendants "manufactured evidence" that Singer acted improperly during the investigation of one of his cases, and then used this manufactured evidence against Singer . . ."  An alternate definition of "manufacture" is

7

to "invent, fabricate <known to *manufacture* evidence>." Merriam-Webster Online, www.merriam-webster.com/dictionary/manufacture. Accepting the allegation as true, the First Amended Complaint sufficiently alleges defendants published false statements, premised on fabricated evidence, about Singer.

Second, citing *Cohlmia v. Ardent Health Services, LLC*, 448 F. Supp.2d 1253 (N.D. Okla. 2006), defendants argue that plaintiff has failed to allege in what manner any publication by the defendants was false, i.e., in what respect was what the defendants are alleged to have published not true? *Cohlmia* stands for the state proposition that "the plaintiff must afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Id.* at 1268 (quotation omitted). Like defendants, this court is interested to see the specifics of how the allegedly "manufactured *Giglio* material" was false. However, the plaintiff has afforded defendant sufficient notice in the First Amended Complaint of the communications complained of to enable defendants to defend themselves, thereby meeting the standard set forth in *Cohlmia*.

Third, defendants argue the alleged disclosures were nothing more than opinions, and are therefore not actionable. "As a general rule, statements which are opinionative and not factual in nature, which cannot be verified as true or false, are not actionable as slander or libel under Oklahoma law." *Metcalf v. KFOR-TV, Inc.*, 828 F. Supp. 1515, 1529 (W.D. Okla. 1992) (citing *Miscovsky v. Okla. Publ'g Co.*, 654 P.2d 587, 593-94 (Okla. 1982)). "However, if an opinion is stated as or is in the form of a factual imperative, or if an opinion is expressed without disclosing the underlying factual basis for the opinion, the opinion is actionable under Oklahoma law if the opinion implies or creates a reasonable inference that the opinion is justified by the existence of undisclosed defamatory and false facts." *Id.* at 1529 (internal quotations omitted). Plaintiff argues "Defendants' statements that Singer's earlier case investigation contained *Giglio* Material

8

supports the reasonable inference that Defendants' statements were justified by the existence of undisclosed defamatory and false facts." This court is unpersuaded. Here, the prosecutor's determination that Singer's prior conduct constituted *Giglio* material does not necessarily imply or create such a reasonable inference.

For the purposes of the motion before the court, however, the plaintiff has alleged that defendants manufactured, i.e., fabricated evidence, that they determined the fabricated evidence constituted *Giglio* material, and that their slanderous statements were made "with their manufactured evidence in hand." At this stage, Singer's factual allegations are sufficient to state a plausible claim for slander.

### B. Libel Claim

"Libel" is statutorily defined as

> . . . a false or malicious unprivileged publication by writing, printing, picture, or effigy or other fixed representation to the eye, which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation, or any malicious publication as aforesaid, designed to blacken or vilify the memory of one who is dead, and tending to scandalize his surviving relatives or friends.

12 Okla. Stat. § 1441.

The First Amended Complaint states a plausible claim for libel to the extent it alleges (1) Lair "provided a statement" to the Claremore newspaper regarding the allegedly manufactured *Giglio* material and (2) Lair, through a close friend, disclosed allegedly manufactured *Giglio* material relating to Singer on the Oklahoma Criminal Defense Attorney Website.

### C. Defamation Claim

To impose liability for defamation, plaintiff must plead and prove:[1]

---

[1] The court notes that at least one Oklahoma appellate panel has considered a police office to be a "public official" for the purposes of proving defamation. *See Torix v. Brown*, 295 P.3d 1138, 1141 (Okla. Civ. App. 2012). If *Torix* correctly states Oklahoma law, malice or reckless disregard for the truth would be an additional element.

1. A false and defamatory statement;
2. An unprivileged publication to a third party;
3. Fault amounting at least to negligence on the part of the publisher; and
4. Either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication.

*Trice v. Burress*, 137 P.3d 1253, 1257 (Okla. Civ. App. 2006).  Defamation includes both libel and slander.  See Restatement (2d) of Torts § 558 (1977).

As discussed above, Singer's factual allegations state plausible claims for slander and libel against defendants.  Further, he has alleged that defendants either intentionally or negligently disclosed false statements to third parties and that the disclosures have harmed his reputation both with the public and within the law enforcement community.

The allegations of the First Amended Complaint, taken as true, state a plausible claim for defamation.

## Conclusion

For the reasons set forth above, defendants' Motion to Dismiss the Third, Fourth and Fifth Claims for Relief of Plaintiff's First Amended Complaint [Dkt. #31] is denied.

ENTERED this 26th day of November, 2013.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

10